IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-23-154 |
| JERMAINE PORTER, | * | |
| *Defendant*. | * | |

\* * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant Jermaine Porter ("Porter" or "Defendant") is charged in a one-count Indictment with possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1) ("Count One"). (ECF No. 1.) Porter's charge arises from law enforcement officers' discovery of a loaded firearm during a traffic stop of a vehicle in which Porter was a passenger on March 5, 2023. (ECF No. 1 at 1.)[1] Presently pending before the Court is Porter's Motion to Suppress Property and Request for Hearing ("Defendant's Motion") (ECF No. 47).

The parties' submissions have been reviewed, and on December 10, 2024, the Court heard testimony, received evidence, and heard oral arguments regarding Defendant's Motion. For the reasons set forth on the record at the hearing and explained below, Defendant's Motion (ECF No. 47) is DENIED.

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

## BACKGROUND

At approximately 6:00 PM on March 5, 2023, Porter was riding as the front passenger of a 2007 Honda Odyssey minivan driven by Deontae Cooper ("Cooper"), when Baltimore City Police ("BPD") detectives stopped the vehicle on Loch Raven Boulevard in Baltimore City. (ECF No. 47 at 2; ECF No. 57 at 1.) BPD Detectives Reynardo Gomez ("Detective Gomez") and Sergeant Jorge Ruiz ("Sergeant Ruiz") were patrolling the area in an unmarked police vehicle equipped with emergency lights and a siren when they noticed that none of the minivan's rear lamps—including its right, left, and top brake lights—activated when it stopped at a red light at the intersection of Loch Raven Boulevard and Cold Spring Lane. (ECF No. 57 at 1.) After following the van for about three minutes without seeing its brake lights illuminate, the detectives activated their sirens and lights to begin a traffic stop. (*Id.* at 2.) Cooper pulled over, and the detectives stopped their car behind the minivan. (*Id.*)

As the detectives approached the minivan from behind, their body-worn cameras recorded that its lower left and lower right rear brake lights were illuminated, but its top rear brake light was not. (ECF No. 47 at 2; ECF No. 57 at 2.) Detective Gomez approached the driver-side door and informed Cooper that they had stopped him because the vehicle's rear brake lights were not functioning. (ECF No. 47 at 2; ECF No. 57 at 2.) Sergeant Ruiz approached the front passenger door to speak to Porter, who was seated in the passenger seat. (ECF No. 57 at 2.) Cooper told the detectives that the top brake light was not illuminated because he did not have his headlights on, and the car was in park.[2] (*Id.*; ECF No. 47 at 2.)

---

[2] Cooper did not have his driver's license with him but provided the detectives with his name, date of birth, and address to verify his license. (ECF No. 57 at 11.)

2

While Detective Gomez requested Cooper's driver's license and registration, Sergeant Ruiz notified him that he saw controlled dangerous substances in plain sight in the vehicle. (ECF No. 57 at 3.) Both detectives testified that they smelled an odor of marijuana, and Detective Gomez testified that he observed a black Ziplock bag in the front passenger door that he suspected to contain marijuana. (*Id.*) After calling for backup, the detectives asked Porter and Cooper to exit the vehicle so they could search it. (*Id.* at 4; ECF No. 47 at 2.) Porter explained that he could not move without the assistance of his wheelchair because he was recovering from a leg injury. (ECF No. 47 at 2.) While Porter remained seated, Detective Gomez asked if there was anything under him, and he replied that he was not sure. (ECF No. 57 at 4.)

Sergeant Ruiz retrieved Porter's wheelchair from the rear of the vehicle and attempted to lift him from his seat. (*Id.*) While doing so, he observed the barrel of a handgun protruding from under a cushion on Porter's seat. (*Id.* at 4–5; ECF No. 47 at 2.) The gun was also visible in body-worn camera footage. Porter subsequently told the detectives that he used the cushion when seated in his wheelchair. (ECF No. 57 at 5.) The detectives placed Cooper in handcuffs and helped Porter to his wheelchair. (*Id.*) They then removed a light blue SCCY CPS-1 9 millimeter firearm loaded with eight rounds of 9 millimeter ammunition from the minivan. (*Id.*) They advised Porter and Cooper of their *Miranda* rights, which both men acknowledged. (*Id.*) Porter denied ownership of the gun, and Cooper stated that he did not know the gun was in his vehicle. (*Id.*) Sergeant Ruiz told Porter that he had seen him adjusting himself in the seat before the traffic stop began. (*Id.*) The detectives arrested Porter for having possession of the handgun and confirmed his prohibited status with the Maryland Gun Center.

3

(*Id.*)  The detectives issued Cooper a repair order for the top rear brake light and instructed him to have a licensed driver collect the minivan.  (*Id.* at 10 n.10.)

On February 13, 2024, a federal grand jury in Baltimore issued an indictment charging Porter with one count of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C § 922(g)(1).  (*Id.* at 6.)  On March 5, 2023, Porter moved to suppress the handgun and ammunition seized during the traffic stop.  (ECF No. 47.)

## STANDARD OF REVIEW

In a motion to suppress evidence, the government bears the burden of showing that it acted lawfully by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177–78 n. 14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."). *See also United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) ("The government bears the burden of proof in justifying a warrantless search or seizure.").  A traffic stop constitutes a seizure and must meet the Fourth Amendment's reasonableness requirement.  *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (citing *Whren v. United States*, 517 U.S. 506, 809 (1996)).  Courts analyze the reasonableness of a traffic stop under the two-pronged standard elucidated in *Terry v. Ohio*, 392 U.S. 1 (1968).  That is, a traffic stop is reasonable if (1) the stop is legitimate at its inception, and (2) the officers' actions during the stop are reasonably related in scope to the basis for the stop.  *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018).

## ANALYSIS

Under *Terry v. Ohio*, 392 U.S. 1 (1968), a traffic stop is constitutional if (1) the stop is legitimate—that is, supported by reasonable suspicion—at its inception, and (2) the officers'

4

actions during the stop are reasonably related in scope to the basis for the stop. *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018). Here, Porter does not challenge the officers' conduct during the stop, and defense counsel conceded on the record at the December 10, 2024, Motions Hearing that the detectives had probable cause to search the vehicle once they smelled the odor of marijuana. Accordingly, only the first *Terry* prong is at issue.

In his Motion, Porter contends that the Government cannot meet its burden to prove that the stop was supported by reasonable articulable suspicion under *Terry*. (ECF No. 47 at 4–5.) Porter argues that the body-worn camera footage showing that the minivan's lower left and right rear brake lights were illuminated during the stop impeaches the detectives' assertion that they stopped the minivan because its rear brake lights were not functioning. (*Id.* at 5.) Porter contends that the mere fact that the minivan's top rear brake light never illuminated in the body-worn footage cannot provide reasonable suspicion because the van may have been in park or Cooper may not have been pressing the brake pedal during the stop. (*Id.*) Similarly, Porter contends that even if the stop was based on the detectives' mistaken belief that the brake lights were broken, that mistake was unreasonable because they followed the van for many blocks before initiating the stop. (ECF No. 61 at 3.) Accordingly, Porter asserts that the handgun and ammunition must be suppressed as fruits of an unconstitutional stop. (*Id.*)

In opposition, the Government argues that Porter's Motion should be denied because (1) the detectives had reasonable suspicion because the top brake light never illuminated, and (2) any mistake regarding the brake lights' functionality was reasonable.[3] (ECF No. 57 at 8,

---

[3] The Government also argued that Porter lacks Fourth Amendment standing to challenge the seizure of the firearm and ammunition. (ECF No. 57 at 6.) Although the government bears the burden of proving that a warrantless search or seizure is reasonable, *United States v. Ingram*, 597 F. App'x 151, 152 (4th Cir. 2015), a

5

12.)  First, the Government argues that the initial stop was reasonable because the detectives observed that the minivan's brake lights were not operating properly, and Maryland traffic laws require vehicles to have stop lamps that "display a red light, visible from a distance of not less than 300 feet to the rear in normal sunlight … [that becomes] actuated on application of the service brake." (*Id.* at 10 (citing MD. CODE ANN., TRANSP., §§ 22-206, 22-219(a)(1), 22-219(a)(2)).)  The Government argues that Porter's claim that the rear lower lights were illuminated on body-worn camera footage does not impeach the detectives' statements because the detectives' reasonable suspicion was based on the functionality of the lights before the stop began.  (*Id.* at 11)  Second, and alternatively, the Government asserts that even if the top rear brake light did not activate because the van came to a stop without Cooper pressing the brake pedal, it was a reasonable mistake of fact for the detectives to believe that the light was not illuminating because it was broken.  (*Id.*)

Under the first prong of the *Terry* analysis, a traffic stop is legitimate at its inception if an officer has observed a traffic violation.  *United States v. Palmer*, 820 F.3d 640, 649, 650 (4th Cir. 2016); *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008); *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013).  Even where an officer's observation is based on a mistake of law or fact, the stop is still legitimate if that mistake was objectively reasonable.  *Heien v. North*

---

defendant must show that he has Fourth Amendment standing to challenge an unreasonable search or seizure. *See United States v. Green*, 106 F.4th 368, 375 (4th Cir. 2024).  A passenger in a vehicle has standing to challenge the constitutionality of a traffic stop.  *See Brendlin v. California*, 551 U.S. 249, 256–57 (2007).  Similarly, a passenger may challenge a search of a vehicle as the fruit of an unconstitutional stop, even though the passenger would lack standing to challenge the search directly.  *See United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (recognizing passenger in vehicle may challenge search of vehicle as fruit of an unconstitutional stop).  Here, Porter challenges the seizure of the handgun and ammunition only as the fruit of an unconstitutional traffic stop.  Accordingly, as the Government conceded on the record at the Motions Hearing, Porter has Fourth Amendment standing.  Therefore, the Court need not further address the Government's standing argument.

*Carolina*, 574 U.S. 54, 67–68 (2014); *United States v. Arias*, 213 F. App'x 230, 232 (4th Cir. 2007). Because the burden at a suppression hearing is on the government, the government must prove by a preponderance of the evidence that an officer's mistake of fact was reasonable. *United States v. McGee*, 736 F.3d 263, 270 (4th Cir. 2013) (quoting *United States v. Ellington*, 396 F. Supp. 2d 695, 700–701 (E.D. Va. 2005). The U.S. Court of Appeals for the Fourth Circuit has held that an officer's observation of a malfunctioning brake light provides "ample probable cause to initiate [a] stop." *United States v. Morton*, 239 F. App'x 798, 805 (4th Cir. 2007).

Here, Detective Gomez told Cooper and wrote in the statement of probable cause that he stopped the minivan because its rear brake lights did not display when Cooper stopped at a red light or when he pulled over. (ECF No. 47-1 at 1–2.) The detectives' body-worn camera footage shows that the minivan's right and left rear lights were illuminated at the time of the traffic stop, but the top rear brake light was not illuminated when the van pulled over. As both detectives explained on the record, vehicles in Maryland must have three functioning brake lights. Regardless of the functionality of the lower left and right brake lights, therefore, the minivan's malfunctioning top rear brake light constituted a traffic violation. For this reason, the detectives issued Cooper a repair order for the minivan's top rear brake light. Accordingly, the malfunctioning top rear brake light visible in the body-worn camera footage provided reasonable suspicion of a traffic violation such that the officers constitutionally stopped Cooper and Porter.[4] *See* MD. CODE ANN. TRANSP. § 22-206(a) ("Every … van …

---

[4] As the Court noted on the record, the minivan's lower left and lower right rear brake lights are illuminated on the detectives' body-worn camera footage, and these brake lights would have illuminated regardless of whether Cooper had switched on his headlights. While the Court understands Porter's assertions regarding the detectives' credibility based on the inconsistency between their body-worn camera footage and their testimony, at no point in any body-worn camera footage did the top rear brake light illuminate. Therefore, it remains

shall be equipped with a red center high mount stop lamp mounted."); *id.* § 22-219 (a)(2) (requiring stop lamps to display red light).[5] As explained on the record, therefore, the traffic stop was reasonable, and Defendant's Motion is DENIED.

## CONCLUSION

For the foregoing reasons and for the reasons explained on the record at the December 10, 2024, Motions Hearing, the traffic stop of the minivan in which Porter was a passenger was reasonable. Accordingly, Defendant's Motion to Suppress Property (ECF No. 47) is DENIED.

A separate order follows.

Dated: December 10, 2024

/s/
_____
Richard D. Bennett
United States Senior District Judge

---

undisputed that the minivan's top rear brake light was not functioning before or during the stop, and Cooper received a repair order for the top rear brake light.

[5] Even assuming, *arguendo*, that Maryland law does not require vans to have three functioning rear brake lights, it would still be a reasonable mistake of law for officers to believe that all brake lights must be functional. *Heien v. North Carolina*, 574 U.S. 54, 67–68 (2014). Similarly, even if the detectives were factually mistaken about which brake lights were malfunctioning, that mistake would be reasonable. An objectively reasonable officer would expect that, as a vehicle stopped, the driver would press the brake pedal and the top rear brake light would illuminate. An objectively reasonable officer also would believe that, assuming all brake lights are functional, if the left and right rear brake lights illuminate, so too will the top rear brake light.