IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>JERMAINE PORTER,<br>    *Defendant* | Case No. 23-cr-00154-ABA |

**MEMORANDUM OPINION AND ORDER**

On September 24, 2025, a jury unanimously found Mr. Jermaine Porter guilty of one count of possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Mr. Porter has filed a combined Motion for Judgment of Acquittal and for a New Trial under Federal Rules of Criminal Procedure 29 and 33. For the following reasons, that motion will be denied.

**I.    BACKGROUND**

On April 27, 2023, Mr. Porter was charged by indictment with one count of possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. That charge arose from a March 5, 2023 traffic stop of a vehicle in which Mr. Porter was a passenger, during which Baltimore Police Department ("BPD") officers recovered a loaded firearm. On January 13, 2025, a jury trial commenced before Judge Richard D. Bennett. ECF No. 95. The jurors were unable to reach a unanimous verdict during that trial. Judge Bennett declared a mistrial on January 15, 2025. ECF No. 97.

On Monday, September 15, 2025, a retrial commenced, presided over by the undersigned. ECF No. 177. On the first day of trial, the parties selected a jury and gave opening statements. *Id*. During voir dire, the Court informed the jury that the trial was

1

expected to proceed from Monday, September 15 through Wednesday, September 17 and Friday, September 19, and that proceedings would not be held on Thursday, September 18.

On Tuesday, September 16, 2025, the Government presented its case with testimony by four witnesses (the driver of the vehicle, Deonate Cooper, and three BPD officers: Detective Reynardo Gomez, Sergeant Jorge Bernardez-Ruiz, and Officer Joshua Kelly), introduced body camera footage from the traffic stop, and introduced stipulations into the record. ECF No. 178. In the body camera footage, Mr. Porter, who had recently been shot and was recovering from surgery, is seen sitting on a thin medical pillow. The gun at issue was recovered from the passenger seat where Mr. Porter was seated, between the car seat and the medical pillow. The body camera footage shows that Mr. Porter, after requesting multiple times to not have to get out of the car, showed no surprise when the officer pulled the firearm from under Mr. Porter. After the Government rested, Mr. Porter made an oral motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a), which the Court denied.

Mr. Porter called two witnesses on September 16, 2025 (Mr. Porter's mother, Andrea Hartz; and Sean Mayberry) and one witness on September 17, 2025 (Dr. Ovais Inamullah, a neurologist). ECF Nos. 178 & 179. Upon resting his case, Mr. Porter renewed his motion for judgment of acquittal, on which the Court reserved decision. ECF No. 179. The Court then gave instructions to the jury, and the parties gave closing arguments. Following closing arguments, one of the final instructions to the jury directed that "no member of the jury should communicate with the court by any means other than a signed writing" and instructed them that they "may not reveal to any person—even to the court—how the jury stands, numerically or otherwise, on the

question of the guilt or innocence of the defendant, until after you have reached a unanimous verdict." The jury began deliberations that afternoon (Wednesday, September 17). *Id.* The jury did not deliberate on Thursday, September 18, 2025, resuming its deliberations on Friday, September 19, 2025.

On Friday, September 19, 2025 at 3:42 p.m., after the jury had been deliberating most of the day, the Court sent a note to the jury stating: "Dear jurors, Thank you for your continued service in this case. In order that I may direct the courthouse staff, please respond with a note stating how much longer you would like to continue deliberating today, before being dismissed for the weekend to return on Monday." ECF No. 188. This was the first note between the Court and the jury in this case. At 3:56 p.m., the jury sent a note back stating: "Dear Judge, We would request to talk/think until 4:15pm today, if at that point we will either have a verdict or will come back Monday." ECF No. 189. At 4:25 p.m., the jury sent another note stating: "No decision made as of yet. We will be back Monday." ECF No. 190. Therefore, the jury was excused at approximately 4:30 p.m. on September 19 to return on Monday, September 22, 2025.

The jury returned on Monday, September 22, 2025, and, at approximately 11:37 a.m., the Court sent a note to the jury stating: "Thank you for your continued service in this case. The Rosh Hashanah holiday starts this evening. Will any of you be observing the holiday? If so, I will plan to dismiss the jury around 3:30 p.m. today, to reconvene to continue deliberations on Wednesday." ECF No. 191. At 11:45 a.m., the jury responded: "Dear Judge, We are close to verdict but have 1 holdout. We are still discussing the points. A couple of jurors mentioned that they are observing the holiday tomorrow." ECF No. 192. The information about how the jury was divided was not only unsolicited, but contradicted the Court's instruction that the jury "not reveal to any person—even to

3

the court—how the jury stands, numerically or otherwise, on the question of the guilt or innocence of the defendant."

At 3:25 p.m., the Court sent a note stating:

> Dear jurors, Thank you for your continued service in this case. I understand the jury has not yet reached a verdict, and that some of you observe the Rosh Hashana holiday. Accordingly, you are dismissed for the day, to return on Wednesday at 9:30 a.m. to resume your deliberations. As always, please make sure not to discuss the case with anyone (other than when all your fellow jurors are assembled in the jury room) and not to conduct any independent research about the case.

ECF No. 193. The jury did not sit on Tuesday, September 23, to allow observation of the holiday, and returned for deliberations on Wednesday, September 24, 2025. At 1:05 p.m. on Wednesday, the jury sent a note stating: "We have reached a verdict." ECF No. 194. Once the Court reconvened with all parties and counsel present, the foreperson informed the Court that the jury had reached a consensus and unanimously found Mr. Porter guilty.

On October 2, 2025, Mr. Porter filed a motion for judgment of acquittal and for a new trial. ECF No. 203. On October 16, 2025, the government filed a response in opposition. ECF No. 206.

## II.     LEGAL STANDARD

### A.     Fed. R. Crim. P. 29: Motion for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29, a court may set aside a guilty verdict returned by a jury and enter an acquittal if, "as a matter of law[,] the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (*quoting Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986); *citing* Fed. R. Crim. P. 29 (a), (c)). "The

4

jury's verdict must be accepted if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993) (hereinafter, "*United Med.*") (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Whitfield*, 715 F.2d 145, 148 (4th Cir. 1983) (citing *Jackson*)); *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Accordingly, the Court must affirm a guilty verdict "if there is substantial evidence of each element of each offense." *United Med.*, 989 F.2d at 1402 (*citing Glasser v. United States*, 315 U.S. 60, 80 (1942)).

"[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. In applying this standard of review, [the Court] must remain cognizant of the fact that '[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996) (hereinafter, "*Burgos I*") (citing *United States v. Smith*, 29 F.3d 914, 917 (4th Cir. 1994); *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994)) (internal citations omitted). Therefore, in the event of a conviction, the Court "must assume that the jury resolved all contradictions . . . in favor of the Government." *United States v. Barronette*, 46 F.4th 177, 205 (4th Cir. 2022) (quoting *United Med.*, 989 F.2d at 1402) (finding that the uncorroborated testimony of one witness was sufficient evidence to sustain a conviction).

### B. Fed. R. Crim. P. 33: New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In reviewing the sufficiency of evidence in a criminal case, a guilty verdict must be upheld if there is substantial evidence, taking the view most favorable to the prosecution, to support it." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (*citing Glasser v. United States*, 315 U.S. 60, 80 (1942)). The Court must exercise its discretion in determining whether there is substantial evidence to support the verdict. *Id*. But "a court should exercise its discretion to grant a new trial sparingly, and [] it should do so only when the evidence weighs heavily against the verdict." *Id*. (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997); *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)) (internal quotation marks omitted). *See also United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (quoting Fed. R. Crim. P. 33(a); *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017)) ("Trial courts may vacate convictions 'and grant a new trial if the interest of justice so requires.' However, these are highly disfavored motions that a court should grant only 'sparingly.'") (citations omitted).

### III. DISCUSSION

#### A. Mr. Porter's jury coercion claim

Mr. Porter first argues that given the length of time that the jury deliberated, and the Court's awareness that there was an 11-1 split, the sole holdout juror likely felt coerced to change their vote. ECF No. 203 at 5–6. "Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). The Court must evaluate a motion regarding jury coercion "in its context and under all the circumstances" to determine whether any instructions by

6

the Court had a coercive effect on the jury. *Id.* at 237 (*quoting Jenkins v. United States*, 380 U.S. 445, 446 (1965)); *United States v. Taylor*, 19 F. App'x 62, 65 (4th Cir. 2001) (citing *Jenkins*).[1] For example, if a jury returns a verdict soon after receiving supplemental instruction, this suggests the possibility of coercion but is not dispositive. *Lowenfield*, 484 U.S. at 240 (citing *United States v. United States Gypsum Co.*, 438 U.S. 422, 462 (1978)).

In *Jenkins*, the Supreme Court held that the trial court's jury instructions had a coercive effect where the jury had sent a note advising the judge that it was unable to agree upon a verdict "because of insufficient evidence" and the judge told the jury, "you have got to reach a decision in this case." *Jenkins*, 380 U.S. at 446. In *Brasfield v. United States*, the Supreme Court held that the trial judge's inquiry into how the jury was divided when they had sent a note stating that deliberations had stalled had a coercive effect. 272 U.S. 448, 448–50 (1926); *accord Lowenfield*, 484 U.S. at 239 ("[T]he inquiry into the jury's numerical division necessitated reversal because it was generally coercive and almost always brought to bear 'in some degree, serious although not measurable, an improper influence upon the jury.'").

However, in *Lowenfield*, the Supreme Court held that a trial court's polling of the jury regarding whether further deliberations might assist them in returning a verdict

---

[1] Mr. Porter also relies upon *United States v. Burgos*, 55 F.3d 933, 940 (4th Cir. 1995) (hereinafter, "*Burgos II*") to argue that, where the Court is aware of the jury split, it must evaluate a claim of jury coercion from the perspective of a juror in the minority. *See* ECF No. 203 at 5. However, *Burgos II* specifically held that this rule applies to the evaluation of an *Allen* charge, which the Court did not give in this case; therefore, the Court concludes that that rule does not apply here. To any extent that it does apply, the Court concludes that Mr. Porter has not shown any entitlement to a new trial on that basis either.

after deliberation had stalled was not coercive as it was not an inquiry into the jury's division on the verdict. 484 U.S. at 239–40. In *Taylor*, after four hours of deliberations the jury sent a note asking what verdicts to write if they were not unanimous, to which the judge responded,

> The jury cannot reach a verdict unless it is unanimous; in other words, you cannot find the defendant guilty and you cannot find the defendant not guilty unless you are unanimous in your decision. So you need to work as vigorously as you can as a jury to see whether or not without violence to your individual judgments of the case you can reach a unanimous decision on any one or all four of the counts.

19 F. App'x at 65. After another hour of deliberations, the jury sent a note indicating that they were at an impasse as to three of the four counts. *Id*. The judge called the jury back to ask if there was a unanimous verdict as to count one, to which the foreperson stated that the jury had unanimously found the defendant guilty of count one but could not reach a unanimous verdict as to the remaining counts. *Id*. The Fourth Circuit in *Taylor* held that the trial court's handling of these inquiries from the jury did not have a coercive effect as the jury reached a unanimous verdict as to one of the four counts. *Id*.

The facts in Mr. Porter's case are more alike to *Taylor*, 19 F. App'x at 65, than any of the other cited cases, as the Court here did not inquire into the division of the jury (*compare Brasfield*, 272 U.S. at 450), the jurors never indicated that they were at an impasse or unable to reach a decision (*compare id.; Jenkins*, 380 U.S. at 446), and the Court never stated or suggested to the jury that they were required to reach a verdict in this case (*compare Jenkins*, 380 U.S. at 446). Each of the notes sent by the Court were for scheduling purposes only: on September 19, inquiring only into how much more time the jury wanted to deliberate that day before being dismissed for the weekend (ECF

8

No. 188); on the morning of September 22, inquiring whether any jurors observed the Rosh Hashanah holiday so the Court could dismiss the jury early to reconvene the day after the holiday (ECF No. 191); and on the afternoon of September 22, dismissing the jury early for the holiday and instructing them to reconvene on September 24 (ECF No. 193). Although the jury did volunteer in their response to the Court's note about dismissing early for the holiday that there was "1 holdout," the Court had not inquired into the split of the jury and did not respond to the mention of the holdout in dismissing the jury for the day. ECF No. 192. Similar to *Lowenfield*, 484 U.S. at 239–40, the jury indicated that the jurors believed that they would be able to make a decision with more time as they were "still discussing the points." ECF No. 192. Accordingly, there is no indication that any of the notes between the Court and the jury had a coercive effect such that Mr. Porter's motion for judgment of acquittal or a new trial should be granted.

**B.     Substantial evidence supported the jury's guilty verdict**

Mr. Porter next argues that there was insufficient evidence to support the jury's guilty verdict. ECF No. 203 at 3–4. That requires the Court to consider whether there was substantial evidence presented at trial, which "is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Burgos I*, 94 F.3d at 863. In applying this standard of review, a court "must remain cognizant of the fact that '[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" *Id.* (citing *Smith*, 29 F.3d at 917; *Murphy*, 35 F.3d at 148) (internal citations omitted).

9

To establish a violation of 18 U.S.C. § 922(g)(1), the government had to prove four elements beyond a reasonable doubt: (1) that prior to March 5, 2023, Mr. Porter had been convicted of a crime punishable by a term of imprisonment exceeding one year, his civil rights had not been restored, and he had knowledge of his felony status on March 5, 2023; (2) that the firearm meets the definition of "firearm" in 18 U.S.C. § 921(a)(3), and the eight rounds of ammunition loaded in that firearm meet the definition of "ammunition" in 18 U.S.C. § 921(a)(17); (3) that the firearm and the ammunition traveled in or affected interstate commerce; and (4) that Mr. Porter knew he was in possession of the firearm and ammunition on March 5, 2023. *See* 18 U.S.C. § 921(a)(3). Mr. Porter stipulated to the first three elements; therefore, the only dispute at trial was whether Mr. Porter <u>knowingly</u> possessed the firearm and ammunition at issue. *See* ECF No. 183 at 3.

In presenting its case, the government elicited testimony from four witnesses (the driver of the car and three BPD officers), played body camera footage from BPD's traffic stop of Mr. Porter and the driver, showed still images from the body camera footage, and read the stipulations onto the record. As noted above, the body camera footage showed that Mr. Porter was sitting on the gun that was recovered, with only a thin medical pillow between him and the gun. The footage also showed that the pillow was designed with several holes in it, such that the gun would have been visible even with the pillow sitting on top of it. The footage also showed that when Mr. Porter eventually acceded to getting out of the car—for which he required assistance, given his recent gunshot injury—he showed no surprise when the officer pulled the gun out from under his thigh. The body camera footage, even standing alone, was sufficient for the jury to conclude beyond a reasonable doubt that the knowledge element was satisfied. But there

was other evidence of Mr. Porter's knowledge too, including testimony from Sergeant Ruiz, who described, among other things, having observed Mr. Porter reaching down as the officers followed the car before it stopped, and the testimony of the driver, whose testimony the jury could reasonably have concluded supported the conclusion that the gun was Mr. Porter's. As the Court is not to consider the credibility of the evidence and must instead view the evidence in the light most favorable to the government, the consistent testimony by the government's witnesses and the videographic evidence are sufficient evidence from which the jury could reasonably have concluded, beyond a reasonable doubt, that Mr. Porter knowingly possessed the firearm and ammunition. Accordingly, the evidence presented at trial was substantial such that Mr. Porter's motion for judgment of acquittal or for a new trial must be denied.

      For the aforementioned reasons, Defendant's Motion for Judgment of Acquittal or a New Trial (ECF No. 203) is DENIED.

Date:  December 12, 2025

                                          /s/
                                      Adam B. Abelson
                                      United States District Judge